No. 02-651

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 313

FILED

DEC 17 2002

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

DARLENE PAYNE, individually and as )
Personal Representative of the Estate of )
RAYMOND A. NAUMER, )
                                     )        O R D E R
        Petitioner, )
                                       )        A N D
    v. )
                                       )        O P I N I O N
THE EIGHTH JUDICIAL DISTRICT COURT, )
CASCADE COUNTY, THE HONORABLE )
KENNETH R. NEILL, Presiding Judge, JIM )
KNUTSON, and DUTCH KNUTSON, )
                                       )
        Respondents. )

¶1     Petitioner Darlene Payne seeks a writ of supervisory control over the Respondents, the District Court for the Eighth Judicial District in Cascade County, the Honorable Kenneth Neill, Jim Knutson, and Dutch Knutson.

¶2     In October of 1998, Payne's son, Raymond Naumer, was killed in a rollover accident while driving a tractor near Belt, Montana. On January 19, 2001, Payne, individually and as personal representative of the estate of Raymond Naumer, filed wrongful death and survivorship actions against the Defendants, Lilah Knutson, Jim Knutson, and Dutch Knutson.

¶3     The Defendants intended to call Daniel Vuckovich as an expert witness at trial to contradict Payne's evidence on future earnings. Vuckovich figured to testify that Naumer's prospective earnings should be reduced on account of economic consumption–the amount

1

of projected earnings that Naumer would spend on basic necessities and personal expenditures throughout his lifetime. In April of 2002, Payne filed a motion in limine which sought to exclude the economic consumption testimony as it pertained to the survivorship action. Following oral argument on the matter, the District Court denied Payne's motion to exclude the testimony. In so doing, Judge Neill stated:

> To me it's illogical to allow somebody to recover the same thing that they would have recovered had they survived, in which case there would have been consumption. And I think that you can cross-examine Mr. Vuckovich about the discrepancies in how different people might consume their earnings.

¶4 On October 16, 2002, Payne filed an application for a writ of supervisory control with this Court pursuant to Rule 17, M.R.App.P. Payne contends that the District Court erred as a matter of law when it denied her motion. Payne insists that this error will force the parties into a needless cycle of trial, appeal, and retrial.

¶5 Supervisory control should issue when a district court proceeds under a mistake of law causing a gross injustice for which an appeal is not an adequate remedy. *Safeco v. Montana Eighth Judicial Dist.*, 2000 MT 153, ¶ 14, 300 Mont. 123, ¶ 14, 2 P.3d 834, ¶ 14. Supervisory control is an extraordinary remedy exercised only in extraordinary circumstances. *Safeco*, ¶ 14. As indicated above, the District Court was going to permit the jury to consider evidence of economic consumption as it pertained to the survival action. For the reasons discussed below, to proceed in such a fashion would constitute a deviation from well established jurisprudence in the litigation of survival and wrongful death actions. Inevitably, this mistake of law would alter the cost of and preparation for trial, affect settlement negotiations, and call into question the value of any potential verdict resulting in

additional time and expense for appellate resolution and subsequent litigation. *See Plumb v. Fourth Jud. Dist. Court* (1996), 279 Mont. 363, 370, 927 P.2d 1011, 1016. Therefore, any remedy available to Payne on direct appeal would prove inadequate resulting in a gross injustice. As such, we conclude that this is an appropriate case in which to exercise supervisory control.

## DISCUSSION

¶6 Did the District Court err when it denied Payne's motion to exclude the economic consumption evidence from the jury's consideration in computing survival damages?

¶7 As indicated above, this case implicates two distinct causes of action, survivorship and wrongful death. Survival actions derive from § 27-1-501, MCA, which provides in part:

> (1) An action, cause of action, or defense does not abate because of the death or disability of a party or the transfer of any interest therein, but whenever the cause of action or defense arose in favor of such party prior to his death or disability or transfer of interest therein, it survives and may be maintained by his representatives or successors in interest.

The survival action belongs to the decedent's estate and allows recovery for the injury to the deceased from the action causing death. Thus, the damages recoverable in the action are personal to the decedent and the estate's right of recovery is identical to the decedent's had he or she lived. *See Swanson v. Champion Intern. Corp.* (1982), 197 Mont. 509, 515, 646 P.2d 1166, 1169; *Brockie v. Omo Const., Inc.* (1994), 268 Mont. 519, 523, 887 P.2d 167, 169 *overruled on other grounds by Porter v. Galarneau* (1996), 275 Mont. 174, 911 P.2d 1143. Only the personal representative may sue for the damages suffered by the decedent in survival actions. Section 27-1-501, MCA. Neither the widow nor any other heir has a legal

3

right to pursue the action unless appointed personal representative. *Swanson*, 197 Mont. at 515-16, 646 P.2d at 1169.

¶8 Section 27-1-513, MCA, creates a separate cause of action, wrongful death, which vests in the heirs of the decedent:

> When injuries to and the death of one person are caused by the wrongful act or neglect of another, the personal representative of the decedent's estate may maintain an action for damages against the person causing the death or, if such person be employed by another person who is responsible for his conduct, then also against such other person.

In contrast to the survival action, the wrongful death action is personal to the decedent's heirs and independent of any cause of action available to the decedent's estate. This right of recovery seeks to compensate the heirs for the harm or damages that they personally suffered as a result of the decedent's death. *See Swanson*, 197 Mont. at 517, 646 P.2d at 1170.

¶9 Both parties appear in agreement with the conceptual notions reiterated above. However, for purposes of this case, the dispute arises with the next step in the analysis, i.e., to what measure of damages are the aggrieved parties entitled? More specifically, the parties disagree as to whether a jury should be entitled to offset a potential survival award on account of economic consumption.

¶10 In a survival action, the decedent's estate may recover damages for lost earnings from the time of injury to death; the present value of the decedent's reasonable earnings during his or her life expectancy; medical and funeral expenses; pain and suffering; and other special damages. *Swanson*, 197 Mont. at 515, 646 P.2d at 1169. The majority view regarding loss of future earnings is that the award should not be reduced on account of economic

4

consumption. *See Overly v. Ingalls Shipbuilding, Inc.* (Cal. Ct. App. 1999), 87 Cal.Rptr.2d 626, 633. Likewise, *Swanson*, its predecessors, and its progeny all speak in terms of entitlement to lost future earnings, not "net" lost earnings as mandated by those minority view jurisdictions. Further, no statute exists in Montana which requires an offset of lost future earnings for economic consumption. Therefore, as our case law indicates, Montana follows the majority view that economic consumption should not factor into a loss of future earnings computation in survival actions.

¶11 As for wrongful death damages, § 27-1-323, MCA, provides that "damages may be given as under all the circumstances of the case may be just." Generally, a wrongful death plaintiff may recover for loss of consortium; loss of comfort and society; and the reasonable value of the contributions in money that the decedent would reasonably have provided for the support, education, training, and care of the heirs during the life expectancies of the decedent and survivors. *Swanson*, 197 Mont. at 517, 646 P.2d at 1170. The loss of support claim in wrongful death actions is not measured by the decedent's lost future earnings, per se. Rather, "it is measured in terms of the needs of the heirs which the decedent would reasonably have supplied to the heirs had he lived." *Swanson*, 197 Mont. at 518, 646 P.2d at 1171. As such, since at least 1929, this Court has required a deduction for the "cost of maintenance," or economic consumption, from wrongful death damages. *See Burns v. Eminger* (1929), 84 Mont. 397, 411, 276 P. 437, 443 *overruled on other grounds by Daly v. Swift & Co.* (1931), 90 Mont. 52, 300 P. 265.

¶12 The following passage provides a good summation of Montana's treatment of lost

5

future earnings and lost support in survival and wrongful death actions:

> The decedent's earning capacity is *not* the measure of damages for lost support. However, an acceptable way to show how much money would have been available for the support of a decedent's wife and children is to show what the decedent probably would have earned during the remainder of his life, and to deduct from that amount his personal maintenance expense and the amount he would have spent on other things. By contrast, in a personal injury action where lost years damages are recoverable, the measure of damages is not lost support but rather lost earnings during the period the plaintiff would have lived if not for the injury. Speculating as to how the injured party may have spent those future earnings if not for defendant's tortuous conduct is a very different exercise than permitting a wrongful death plaintiff to prove damages for lost support by accounting for his or her supporter's other expenses.

*Overly*, 87 Cal.Rptr.2d at 634 (citations omitted).

¶13    Prior to 1987, this distinction had little impact on the presentation of evidence in survival and wrongful death actions as Montana law enabled respective parties to file the actions separately. Generally speaking, litigants either did or did not present evidence of economic consumption depending on the cause of action alleged. However, in 1987, the Legislature amended § 27-1-501, MCA (1985), to require that "[a]ctions brought under this section and 27-1-513 must be combined in one legal action, and any element of damages may be recovered only once."

¶14    While the 1987 amendment did change the procedure one must follow in bringing the actions, the amendment did not change the respective substantive law in the area. That is, the *Swanson* line of authority still precludes consideration of economic consumption in survival actions, while *Burns* and its progeny deem economic consumption relevant in wrongful death actions. The change in procedure essentially occurred to statutorily declare

6

a prohibition against double recovery in wrongful death and survival actions. However, the current state of the law on the two actions, as discussed above, comports with the legislative declaration. In survival actions, the decedent's estate is entitled to recover the full value of the lost future earnings, including that portion attributable to economic consumption. In wrongful death actions, the decedent's heirs are not entitled to the economic consumption allocation. Therefore, as to this portion of the award, no duplicative recovery occurs. To the extent any overlap exists with the remainder of the award, the judge or jury will have to carve out any duplication consistent with the statutory bar against double recovery.

¶15 For the foregoing reasons, we accept supervisory control over the District Court and instruct it to marshal the evidence and admonish the jury in a manner which is consistent with this Order and Opinion.

DATED this _17_ day of December 2002.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

7

Justice W. William Leaphart dissenting.

¶16 I dissent. I do not agree that this is an appropriate case in which to exercise supervisory control. As the court's order recognizes, supervisory control should issue when a district court proceeds under a mistake of law causing a gross injustice for which an appeal is not an adequate remedy. *Safeco v. Montana Eighth Judicial District*, 2000 MT 153, 300 Mont. 123, 2 P.3d 834. The Court concludes that this petition presents an "appropriate case in which to exercise supervisory control."

¶17 Without expressing an opinion on the merits of the issue raised, I would not deem the case appropriate for supervisory control for the reason that there is an adequate remedy by way of appeal.

¶18 The effect of the District Court's order is that the jury will be presented with testimony from two economic experts. The petitioner's expert, Mr. Bordeau, will testify as to Naumer's future earnings with no offset for consumption. The respondent's expert, Mr. Vuckovich, will testify as to future earnings loss reduced by Naumer's consumption. If the jury, by way of special verdict interrogatory, is asked to specify the amount, if any, that damages are reduced due to decedent's consumption, any challenge to the admissibility of the expert economic testimony can be adequately resolved on appeal.

¶19    In my view, the adequacy of a remedy on appeal is still a criterion that must be addressed in determining whether we accept a petition for an extraordinary writ.  In the present matter, Payne has an adequate remedy by way of appeal.

_____
                          Justice

Chief Justice Karla M. Gray concurs in the dissent of Justice Leaphart.

_____
                   Chief Justice